# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

KECIA RAMEY,
f.k.a. Kecia Dawn Maynard,

          Plaintiff,

v.                                    CIVIL ACTION NO. 3:19-0503

UNITED STATES DEPARTMENT OF
AGRICULTURE RURAL HOUSING SERVICE,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant United States Department of Agriculture Rural Housing Service's Motion to Dismiss. ECF No. 8. For the following reasons, the Court **DENIES** the motion.

## I.
## BACKGROUND AND
## FACTUAL ALLEGATIONS

On July 8, 2019, Plaintiff Kecia Ramey filed this action seeking relief regarding the pending foreclosure of her house. In her Complaint, Plaintiff alleges that, in or around October 28, 2011, she obtained a mortgage for her primary residence directly through Defendant, the United States Department of Agriculture's Rural Housing Service (RHS). At that time, Plaintiff entered into a Credit Line Deed of Trust with Obligatory Advances for Construction (Deed of Trust). Plaintiff's payments were set at approximately $350 per month, "which included an amount of monthly payment assistance based on Plaintiff's income." *Compl.* at ¶8, ECF No. 2. Shortly after the loan originated, Plaintiff was unable to work due to complications with a pregnancy. As

the result of a loss of income, Plaintiff received a one-year moratorium of her payments in 2012. When the moratorium expired in 2013, Defendant informed Plaintiff she could apply for loss mitigation to bring her account current. However, Defendant also told Plaintiff she should not have received payment assistance because her husband was employed. Defendant re-amortized the loan in early 2013, removing the payment assistance, resulting in a monthly payment of approximately $498 per month.

Plaintiff states that her husband lost his job in 2013, and it was difficult for her to make her payments. Nevertheless, in September 2013, she brought her account current by making a payment of $1,500 to $2,000. Plaintiff experienced another loss of income in March 2014, and Defendant offset her April federal tax return by approximately $1,300.

In July 2014, Plaintiff regained steady income and contacted Defendant. Plaintiff claims Defendant told her the account was approximately $4,000 in arrears and she would have to pay the arrears in full before Defendant would accept any monthly payments. Plaintiff asserts she called Defendant and attempted to make payments in July, August, September, and October 2014, but Defendant refused each time. Plaintiff further alleges Defendant did not provide her a payment booklet, stopped sending her monthly billing statements, and required her to make payments by phone. However, when Plaintiff attempted to pay by phone during the last half of 2014, Plaintiff claims she was told her account could not be located and, therefore, Defendant would not accept her payments. Plaintiff alleges, despite her many attempts to pay on the account, Defendant refused her payments and refused to provide her loss mitigation alternatives. Ultimately, Plaintiff states she gave up and waited for Defendant to send her notice of foreclosure alternatives and any adverse

actions Defendant intended to take, such as acceleration of her loan. Plaintiff asserts Defendant had no contact with her for the next five years when, in April 2019, a door hanger was placed at her residence directing her to contact Defendant's foreclosure trustee about her loan. Plaintiff contacted the trustee and requested foreclosure alternatives, but she claims she received no substantive response and a foreclosure sale was set for July 11, 2019.

Plaintiff alleges she "never received a Notice of Right to Cure, a Notice of Acceleration, or received consideration of any form of foreclosure alternative as required by federal law." *Id*. at ¶28. Additionally, Plaintiff claims that, despite inquires by both herself and her counsel, Defendant has "refused to provide Plaintiff any assistance. Instead of putting forth a good faith effort to achieve a sustainable payment plan with Plaintiff, as specifically required under RHS mortgage loans, Defendant failed and refused to properly process Plaintiff's requests for appropriate loss mitigation under applicable agreements and guidelines, despite Plaintiff's demonstrated ability to make payments." *Id*. at ¶29. Plaintiff further states that Defendant's "prolonged and inadequate loss mitigation review and refusal of payments" has put her so far in debt that it is now not possible for her to pay the entire amount of her arrears, even though she asserts she could have made monthly payments when the foreclosure was noticed. *Id*. at ¶¶31-31.

Faced with imminent foreclosure, Plaintiff filed this action seeking equitable relief and compensatory damages. In Count One of the Complaint, Plaintiff claims Defendant's acts and failures deprived her of her due process rights under the Fifth Amendment. In Count Two, Plaintiff alleges Defendant's actions and inactions breached the Deed of Trust. In its motion, Defendant

argues Plaintiff's claims cannot survive under Rules 12(b)(1) and 12(b)(6) of Federal Rules of Civil Procedure.

## II.
## STANDARD OF REVIEW

It is well established that "the Judicial Code gives federal courts subject-matter jurisdiction over all civil actions 'arising under' the laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006) (citing 28 U.S.C. § 1331). When a defendant raises a motion under Rule 12(b)(1), or the Court considers it *sua sponte*, "Rule 12(h)(3) instructs: 'Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Id*. at 506 (citation omitted). As subject matter jurisdiction controls a court's ability to hear a case, it cannot be forfeited or waived. *Id*. at 514 (citation omitted). On occasions, subject matter jurisdiction may depend upon contested facts. In those instances, "the trial judge may be authorized to review the evidence and resolve the dispute on her own. If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts." *Id.* (citations omitted). When the court determines subject-matter jurisdiction does not exist, "the court must dismiss the complaint in its entirety." *Id*. (citation omitted).

In *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009), the Fourth Circuit explained that subject matter jurisdiction may be challenged in two ways. 585 F.3d at 192 (citation omitted). One situation is when a defendant makes a facial challenge and claims the facts in the complaint are simply insufficient to establish subject matter jurisdiction. In those cases, the court must give the plaintiff the same procedural protections as afforded under Rule 12(b)(6) and consider the factual allegations as true. *Id*.

If, on the other hand, the defendant makes a factual challenge and asserts the plaintiff's jurisdictional allegations are simply untrue, the plaintiff's allegations are given less procedural protection. *Id*. (citation omitted). In those cases, the court ordinarily does not apply the presumption of truthfulness, and the court may "decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. In doing so, the "court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Id*. (internal quotation marks and citation omitted; italics added in *Kerns*).

Yet, a third situation may exist when facial and factual challenges are intrinsically intertwined. In those instances, a court should presume the truthfulness of the allegations. *Id*. at 193. Additionally, the court should provide "the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id*.

In summary, the Fourth Circuit held that for facial challenges "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id*. For factual challenges, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id*. For inextricably intertwined challenges, "the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id*. (citation omitted).

To the extent Rule 12(b)(6) is implicated by Defendant's motion, the Court is mindful that, not only must it assume the truth of the allegations, but it also must look for "plausibility" in the complaint, with allegations that are "enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted). Facial plausibility exists, however, when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The presumption of truth does not apply to legal conclusions. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In this case, the Defendant makes both facial and factual challenges. First, Defendant contends that Plaintiff's allegations involve its discretionary authority under the applicable statutes and regulations. Therefore, Defendant argues that, as a matter of law, Plaintiff cannot maintain an action under the Administrative Procedures Act (APA) for its alleged failure to do discretionary acts and, therefore, this Court lacks subject matter jurisdiction to review its discretionary actions. Second, Defendant asserts Plaintiff lacks standing on the face of her Complaint because she has not alleged she suffered an injury-in-fact. Third, Defendant asserts Plaintiff's factual allegation that she did not receive the required notices or consideration for foreclosure alternatives is untrue and it has evidence the notices were sent. Fourth, Defendant

insists Plaintiff's claim of breach of contract fails under the relevant contract language. Upon review, the Court finds dismissal inappropriate.

## III.
## DISCUSSION

Defendant's first argument is that the applicable federal regulations did not require it to offer Plaintiff alternatives to foreclosure. Nevertheless, Defendant states it did exercise its discretion and granted Plaintiff a moratorium of her payments from April 2012 through January 2013.[1] After the moratorium expired, Defendant states it re-amortized Plaintiff's loan pursuant to 7 C.F.R. § 3550.208, which provides, in part: "Reamortization using the promissory note interest rate may be authorized when RHS determines that reamortization is required to enable the borrower to meet scheduled obligations, and only if the Government's lien priority is not adversely affected." 7 C.F.R. § 3550.208, in part.[2]

---

[1]Plaintiff acknowledged in her Complaint that Defendant granted her a moratorium in making her payments in 2012.

[2]The remainder of the regulation states:

>   (a) Permitted uses. Reamortization at the promissory note interest rate may be used to accomplish a variety of servicing actions, including to:
>
>   (1) Repay unauthorized assistance due to inaccurate information.
>
>   (2) Repay principal and interest accrued and advances made during a moratorium.
>
>   (3) Bring current an account under a delinquency workout agreement after the borrower has demonstrated the willingness and ability to meet the terms of the loan and delinquency workout agreement and reamortization is in the borrower's and Government's best interests.

Although Plaintiff asserts Defendant wrongly failed to offer her other loss mitigation options, Defendant states Plaintiff received a direct loan under Section 502,[3] 42 U.S.C. § 1472, of the Housing Act of 1949, as amended, 42 U.S.C. § 1441 *et seq*. According to Defendant, Section 502 loans are not eligible the loan modification programs offered by other programs such as the Home Affordable Refinance Program (HARP), the Home Affordable Modification Program (HAMP), or the Troubled Assets Relief Program (TARP). With respect to moratoriums, the Secretary is given the authority, pursuant to prescribed regulations, to grant them and suspend a borrower's payments "for so long a period as he deems necessary, upon a showing by the borrower

---

> (4) Bring a delinquent account current in the case of an assumption where the due on sale clause is not triggered as described in § 3550.163(c).
>
> (5) Cover the remaining debt when a portion of the security property is being transferred but the acquisition price does not cover the outstanding debt. The remaining balance will be reamortized for a period not to exceed 10 years or the final due date of the note being reamortized, whichever is sooner.
>
> (6) Bring an account current where the National Appeals Division (NAD) reverses an adverse action, the borrower has adequate repayment ability, and RHS determines the reamortization is in the best interests of the Government and the borrower.
>
> (b) Payment term of reamortized loan. Except as noted in paragraph (a)(5) of this section, the term of the reamortized loan may be extended to the maximum term for which the borrower was eligible at the time the loan was originally made, less the number of years the loan has been outstanding. In all cases, the term must not exceed the remaining security life of the property.

7 C.F.R. § 3550.208(a), (b).

[3] 42 U.S.C. § 1472(h).

that due to circumstances beyond his control, he is unable to continue making payments . . . without unduly impairing his standard of living." 42 U.S.C.A. § 1475(a), in part.[4] Section 1472(h)(14) specifically grants the Secretary discretionary authority over payment of partial claims and mortgage modifications. This section provides, in part:

> The Secretary *may authorize* the modification of mortgages, and establish a program for payment of a partial claim to a mortgagee that agrees to apply the claim amount to payment of a mortgage . . ., for mortgages that are in default or face imminent default, as defined by the Secretary. Any payment under such program directed to the mortgagee *shall be made at the sole discretion of the Secretary and on terms and conditions acceptable to the Secretary*, [with certain exceptions.]

42 U.S.C. § 1472(h)(14), in part (italics added).[5] Similarly, the controlling regulation for Section 502 loans gives Defendant discretionary authority whether to offer loss mitigation options. Specifically, § 3550.201 provides:

---

[4] Subsection (a) further states that "[i]n cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium." 42 U.S.C. § 1475(a), in part.

[5] These provisions include:

> **(A)** the amount of the partial claim payment shall be in an amount determined by the Secretary, and shall not exceed an amount equivalent to 30 percent of the unpaid principal balance of the mortgage and any costs that are approved by the Secretary;
>
> **(B)** the amount of the partial claim payment shall be applied first to any outstanding indebtedness on the mortgage, including any arrearage, but may also include principal reduction;
>
> **(C)** the mortgagor shall agree to repay the amount of the partial claim to the Secretary upon terms and conditions acceptable to the Secretary;

> The Rural Housing Service (RHS) *may approve* special servicing actions to reduce the number of borrower failures that result in liquidation. Borrowers who have difficulty keeping their accounts current may be eligible for one or more available servicing options including: payment assistance; delinquency workout agreements that temporarily modify payment terms; protective advances of funds for taxes, insurance, and other approved costs; payment moratoriums; and reamortization of the loan.

7 C.F.R. § 3550.201 (italics added). Given the discretionary nature of the above operative language that Defendant "may authorize," has "sole discretion," and "may approve" alternatives to borrowers to reduce the number of foreclosures, Defendant argues the Court lacks the authority

---

> **(D)** expenses related to a partial claim or modification are not to be charged to the borrower;
>
> **(E)** the Secretary may authorize compensation to the mortgagee for lost income on monthly mortgage payments due to interest rate reduction;
>
> **(F)** the Secretary may reimburse the mortgagee from the appropriate guaranty fund in connection with any activities that the mortgagee is required to undertake concerning repayment by the mortgagor of the amount owed to the Secretary;
>
> **(G)** the Secretary may authorize payments to the mortgagee on behalf of the borrower, under such terms and conditions as are defined by the Secretary, based on successful performance under the terms of the mortgage modification, which shall be used to reduce the principal obligation under the modified mortgage; and
>
> **(H)** the Secretary may authorize the modification of mortgages with terms extended up to 40 years from the date of modification.

42 U.S.C. § 1472(h)(14)(A)–(H). Similarly, § 1472(h)(9) covers refinancing and provides: "Any guaranteed loan under this subsection may be refinanced and extended in accordance with terms and conditions that the Secretary shall prescribe, but in no event for an additional amount or term which exceeds the limitations under this subsection." 42 U.S.C.A. § 1472(h)(9).

under § 706 the APA[6] to compel Defendant to offer Plaintiff mitigation options. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (holding "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*" (italics original)).

In this case, however, Plaintiff insists that, setting aside Defendant's argument she may not be entitled to any particular foreclosure relief, the regulations do provide she was entitled to notice and the opportunity to be heard on the agency's adverse decision under 7 C.F.R. § 3550.4. This section is mandatory and provides: "Whenever RHS makes a decision that is adverse to a participant, RHS will provide the participant with written notice of such adverse decision and the participant's rights to a USDA National Appeals Division hearing in accordance with 7 CFR part 11. Any adverse decision, whether appealable or non-appealable may be reviewed by the next-level RHS supervisor." 7 C.F.R. § 3550.4. Although Defendant asserts it mailed her all the required notices and there is a rebuttable presumption in its favor that an item mailed was received, Plaintiff contests Defendant's assertion. As this Court stated in *Casto v. Branch Banking & Tr. Co.*, No. CV 3:16-5848, 2018 WL 265586 (S.D. W. Va. Jan. 2, 2018), "the mere rebuttal of a presumption [under the mailbox rule] cannot support the foundation upon which summary judgment may be granted." 2018 WL 265586, at *6. Similarly, as it is a contested issue of material fact, it cannot support a motion to dismiss.[7] Thus, to the extent Defendant's motion relies upon its assertion it

---

[6]Section 706 sets forth the Court's role in reviewing an administrative decision. This section provides, in part: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706, in part.

[7]Defendant attached a Declaration of Mirian Jackson, a Workflow Coordinator employed

provided Plaintiff the required notices and informed her of her right to appeal, the Court denies the motion to dismiss Plaintiff's due process claim based on these allegations.

Plaintiff further suggests she should have been considered for a second moratorium when she had a temporary change of income in March 2014.[8] *See Pl.'s Ex.*, Direct Single Family Housing Loans and Grants - Servicing Handbook, Chapter 5 at 5-12, ECF No. 11-1, at 12 (providing, in part, that "[a] borrower may be eligible for more than 1 moratorium over the life of the loan").[9] However, she insists there is no evidence Defendant considered her for one. In support, Plaintiff cites three cases for the proposition that RHS was required to comply with the moratorium regulations before it could proceed with foreclosure. Upon review, the Court finds these cases are distinguishable from the present case.

---

by RHS. *Decl. of Mirian Jackson*, ECF No. 8-1. In her Declaration, Ms. Jackson states the notices (attached as an exhibit) were mailed to Plaintiff on April 8, 2014. However, it is improper for this Court even to consider the Declaration and exhibit on a motion to dismiss because they are neither part of, nor incorporated by reference into, the Complaint. *See Lowe v. Johnson*, No. 19-6353, 2020 WL 1274529, at *1 (4th Cir. Mar. 17, 2020) (stating "[c]onsideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment. This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discover" (internal quotation marks and citation omitted)).

[8]Plaintiff asserts it was prior to the date that Defendant states it sent out the Notice of Acceleration.

[9]In a footnote, Plaintiff cites *United States v. Shields*, 733 F. Supp. 776 (D. Vt. 1989) and *United States v. Rodriguez*, 453 F. Supp. 21 (E.D. Wash. 1978), for the position she was entitled to a moratorium even after acceleration. *See Shields*, 733 F. Supp. at 785 (stating "a blanket prohibition of all post-acceleration moratorium relief goes beyond the Secretary's scope of statutory authority"); *Rodriguez*, 453 F. Supp. at 22 (E.D. Wash. 1978) (holding, in part, "[t]he fact of acceleration after default does not take this loan out from under the protection Congress obviously intended by the enactment" of § 1475, which provides, in relevant part, that a moratorium is available "[d]uring any time that any such loan is outstanding").

Plaintiff first cites *United States v. Brewer*, No. 2:95-CV-275, 1996 WL 34494311(D. Vt. Sept. 18, 1996). However, *Brewer* was decided in 1996 and relies upon 7 C.F.R. § 1951.313(b), which provided, in part, that "[t]he borrower *will be provided* a form to complete when [RECDS] becomes aware of existing circumstances beyond the borrower's control which may entitle a borrower to a moratorium or if the borrower requests a moratorium without filing the form." 7 C.F.R. § 1951.313(b) (italics added). This section no longer exists, and the regulations that now apply to "direct single family housing loan programs operated by the Rural Housing Service (RHS)" are set forth in 7 C.F.R. § 3550 *et seq.*, as quoted above. 7 C.F.R. § 3550.1. Plaintiff has not cited any section in the current regulations that contains the mandatory language found in § 1951.313(b). Likewise, *United States v. Gomiller*, 545 F. Supp. 17 (N.D. Miss. 1981), cited by Plaintiff was decided in 1981. In *Gomiller*, the court found that, although the borrower was given notice of moratorium relief, her failure to file for such relief did not constitute a waiver because she was expressly told she did not qualify. 545 F. Supp. at 20-21. Finally, Plaintiff also cites *United States v. Rodriguez*, 453 F. Supp. 21 (E.D. Wash. 1978). However, *Rodriguez*, decided in 1978, relied upon 7 C.F.R. § 1861.10, which required the County Supervisor to "advise borrowers in writing of the possible availability of a moratorium.'" 453 F. Supp. at 22 (quoting 7 C.F.R. §1861.10, in part). Again, Plaintiff has not cited any section in the current regulations that contains the same mandatory language found in § 1861.10. Thus, although Defendant certainly is required to follow the regulations currently in effect, the Court finds Plaintiff's reliance upon these cases for purposes of this motion is limited to that basic tenet. Indeed, Plaintiff then proceeds to concede that Defendant possesses "discretion" whether to offer her alternatives to foreclosure. *Pl.'s Mem. of Law in Resp. to Def.'s Mot. to Dismiss*, at 9, ECF No. 11 (stating "[i]t is not in dispute that that the agency has the discretion to offer Ms. Ramey foreclosure alternatives").

Given the discretionary nature of these statutory and regulatory provisions, Defendant argues this Court lacks the authority under the APA to review RHS's actions or inactions.[10] However, Plaintiff expressly denies making a claim under the APA,[11] and, instead, Count 1 is based solely on a violation of the Due Process Clause. This Court is not precluded from reviewing a decision under the Due Process Clause. *See Wood v. United States Dep't of Agric. Rural Hous. Serv.*, No. 2:19-CV-00897, 2020 WL 1521801, at *3 (S.D.W. Va. Mar. 30, 2020) (Goodwin, J.) (stating "even if this court did not have jurisdiction to review whether RHS's actions violated the APA, . . . that would not affect jurisdiction to review RHS's actions under the Due Process Clause [or] . . . under Contract law) (citing *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001) (holding that it can review a "due process claim because it is well settled that even if agency action is committed to its discretion by law, a court may still determine whether the action is constitutional"); *Elecs. of N. Carolina, Inc. v. Se. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985) (stating "an agency decision that violates a statutory or constitutional command . . . is not immune from judicial review even when a lawful exercise of an agency's discretion has that immunity)). Therefore, as Plaintiff has brought a claim under the Due Process Clause, the Court is not prevented from reviewing that claim based upon Defendant's argument under the APA.

---

[10]*See, e.g., Sheldon v. Vilsack*, No. 11-10487, 2012 WL 1068099, at *9 (E.D. Mich. Mar. 29, 2012), aff'd, 538 F. App'x 644 (6th Cir. 2013) (holding that § "1475(a) only requires the USDA to promulgate regulations that authorize it to act, or not to act, without providing any standard for making that decision." Without "guidance for the Court . . . to evaluate the agency's discretion to determine the circumstances under which it will grant moratoria, that decision is committed to agency discretion by law and is not subject to judicial review").

[11]The APA is the legal process authorizing a suit by "[a] person suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702.

Defendant further argues Plaintiff lacks standing to bring a claim under Article III of the Constitution because she has not alleged an injury in fact. Under Article III, a federal court's jurisdiction is limited to "cases and controversies," U.S. Const. art. III, § 2, and a plaintiff must establish standing to bring an action. *Allen v. Wright*, 468 U.S. 737, 756 (1984). To establish standing, a plaintiff must demonstrate she has

> [f]irst suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and footnote omitted). In *Wood*, RHS made an identical argument that the plaintiff lacked standing to bring a claim against it. However, the court disagreed and found the plaintiff demonstrated an injury in fact and standing in that a "[l]oss of a home and imminent foreclosure clearly constitute 'an invasion of a legally protected interest which is concrete and particularized.'" *Wood*, 2020 WL 1521801, at *5 (citation omitted). This Court finds the same is true in the present case as Plaintiff faces the loss of her home and imminent foreclosure.

Turning next to Plaintiff's contact claim, "West Virginia law requires "(1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result." *Wood*, 2020 WL 1521801, at *7 (internal quotation marks and citation omitted). To survive a motion to dismiss a contract claim, plaintiffs "must allege

the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages." *Id*. (internal quotation marks and citation omitted). In this case, Plaintiff alleges Defendant breached their contract and its duty of good faith and fair dealing by:

> (a) refusing [her] efforts to make payments; (b) failing to provide [her] notices required and the opportunity for appeal; (c) failing to appropriately conduct review for foreclosure alternatives; and (d) accelerating the loan and pursuing foreclosure without meeting the conditions precedent to acceleration and foreclosure sale set forth in the contract.

*Compl*. at ¶44, in part. Defendant argues, however, there is nothing in the Deed of Trust that requires it to consider alternatives to foreclosure prior to accelerating the loan and seeking foreclosure. However, as stated in *Wood*, it is beyond dispute that the Deed of Trust and Promissory Note "constitute a valid and enforceable contract between Plaintiff and Defendant, [and] [t]he Housing Act is incorporated into the Contract." *Wood*, 2020 WL 1521801, at *7.[12] Additionally, the court found the plaintiff sufficiently alleged that the defendant "breached the express contractual terms and its contractual duties, as defined in the Deed of Trust[.]" *Id*. Assuming the truth of the plaintiff's allegations, the court found the plaintiff "plausibly state[d] a breach or violation of duties outlined in the Deed of Trust, Promissory Note, and Housing Act" as she was confronted with "imminent foreclosure on her house as a result from Defendant's alleged failures to perform its contractual duties[.]" *Id*. (citation omitted). Therefore, the court denied the defendant's motion to dismiss the plaintiff's claim for breach of contract. *Id*. This Court reaches the same conclusion. Assuming the truth of Plaintiff's allegations under the Rule 12(b)(6) standard,

---

[12]The Court quoted language in the Promissory Note that provided: "This promissory note is made pursuant to title V of the Housing Act of 1949 . . . . This note shall be subject to the present regulations of the Government." The Promissory Note in this case contains identical language. *Def.'s Ex. 1*, Promissory Note, at 1, ECF No. 8-1, at 13.

the Court finds she has stated a plausible claim. Therefore, the Court denies Defendant's motion to dismiss the contract claim.

## IV.
## CONCLUSION

Accordingly, having found Plaintiff's due process and contract claims may proceed, the Court **DENIES** Defendant's Motion to Dismiss.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: April 10, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE